Good morning all. Judge Ripple and I are pleased and privileged to have with us as a colleague this morning Judge Peterson from the Western District of Wisconsin and welcome Judge. Thank you. All right our first case for argument this morning is Schaefer v. Universal Scaffolding & Equipment. Good morning Your Honor. I'm pleased to introduce the court counsel and detainees for the plaintiff and appellants Matthew and Cindy Schaefer. I'll get right to the argument gentlemen. We would respectfully disagree with Judge Frazier's standard applied to the spoilation issue in this case. It's not entirely clear either from the pretrial transcript which is pretty evidence that he made up his mind long before we ever got to the motions here but it's not clear entirely either from the transcript from his order exactly what standard he applied. The parties all agree that the Boyd case the Illinois Supreme Court case is controlling here. The Boyd case states that the plaintiff must show that he's got a reasonable probability of success on the merits in the underlying case. Now this underlying case obviously is a products claim. What happened was we would look to the evidence here judges what I would think I believe the best evidence and really the only evidence of what exactly happened here and how this bar is defective is from J.R. Maynard Hudson. He's the individual who was involved in the incident. He's a retired Army veteran of six years. He currently works as an intelligence officer for the Illinois Department of Corrections. He's the most credible witness in this case. He's an employee of brand one of the defendants here. He's got some experience installing scaffolding. His testimony I'm going to read some of it to you this morning because I think it's the most important evidence in this case and it the circumstantial evidence of the defective bar in this case. If you agree with Judge Frazier you're basically telling litigants in Illinois that there is no spoilation tort in Illinois. It's nearly impossible and I look at the cases in spoilation in Illinois it's impossible and the vast majority of them of cases don't have any direct evidence of negligence or defect in a products case like this. That's why there's a spoilation case. It flies in the face of the entire spoilation tort. Is there some... how pointed does the circumstantial evidence have to be to establish a reasonable probability? Well if you look at J.R.'s testimony I think that's that's what you look at and that's he testified that these bars were defective. They were twisted. They were irregular. They were bent. The day of the incident he was having the same problems as everyone else. My question just as a general principle what is the standard of what is reasonable probability mean? Because I get it. According to J.R.'s testimony he said he didn't knock it off with his hip. He was putting it together. It was the kind of problem they had been having with this batch of scaffolding. But the evidence goes both ways because there's the contemporaneous workers comp report that said he dropped it and you know that there's a dispute of fact underlying it all. But how pointed does the circumstances have to be to suggest a reasonable probability? Well it depends on the case. I think that you would do compare the reasonable probability to probably more probably true than not which I think is enough here because the the testimony from J.R. is the day of the incident. But that's what the magistrate said. Well he sort of said that. I see preponderance of the evidence and reasonable probability is more or less the same. I would agree it's not entirely clear from from what his order says and the transcript because you went back and forth a little bit but it's got to be circumstantial. It wouldn't be in a spoilation case like we are here. The bars. No we don't have the bar but the day of the incident when J.R. was working with these bars he testified that there's there there was an issue with getting the bar in place and that caused it to come loose. No we don't have that particular bar. He also testified that all the labels he saw on the job site were universal scaffolding labels and they all had in Wampler the superintendent for Brandt says the same thing. But to get your question judge I think what it depends on the case obviously but what we've got here is some evidence, obviously circumstantial, that there was issues with these bars and when the defendants want to point to the facts as you mentioned that Matt made a statement on his workers comp application those are all questions for the jury. They can judge the credibility of the witnesses. Does the record tell us how many what percentage of the bars were defective of all the bars on the job site what percentage was defective? There are photographs I don't know if it's truly part of the record judge but there were photographs of stacks and stacks on the job site. Yeah but that doesn't tell us the percentage of the bars on the job site that were defective. I don't think anyone testified to percentage. No one testified either am I correct as to what the usual defective rate might be? No that's true. So we really don't know whether this was a an unusual situation with a lot delivered to that job site was off the charts in terms of defective material or not. Well what we do know judge is that these are brand new racks of scaffolding with made in China labels on them. The JR testified and others testified and in this case the bar according to Wampler the superintendent this was a universal scaffolding piece. He noticed universal scaffolding on this piece and to get your directly to your question it was many many pieces. No and there wasn't a percentage or there wasn't an estimate done but all the witnesses even their witnesses testified this is unusual. This is unusual number of pieces that were defective especially brand new shiny pieces right out of the rack. That is very unusual. JR testified to that. There was testimony it wasn't unusual. Oh yeah Matt Schaefer testified to that I think the JR did that this is unusual in his experience he mentioned a prior job site where he didn't have this problem. Not only that but Wampler the superintendent testified that he had all the carpenters going on bang down these couple these cups to keep it in place which was not the way to put these things in. Is that after or before the accident? Before and after. There's testimony it was before and after this incident and that's unusual and for Wampler to say that he was very experienced as is Matt Schaefer my client they both testified that's very unusual that's not how you erect this type of scaffolding. Now with respect to this particular piece though wasn't there testimony that immediately before there installers looked at it they didn't see any problem with the bar people who inspected it immediately after the accident saw nothing wrong with the bar as well. Well the consensus of all the witnesses is you're correct judge but they they all say you've got to compare it to another piece unless you have another piece laying next to it or in your hand and these laborers they're not allowed to inspect every piece for five minutes they're not going to be in the job very long if that happens we all know that. What happens is they look at it pass it up that's what they do that's that's what they're told to do that's all they did here and it's not clear from that visual inspection whether you obviously you can't tell it in a regularity in length from one piece you have to have compared to another one. I mean none of the profited expert testimony really dealt with what kind of testing could be done to determine something a defect other than visual inspection right? Well the experts relied on JR's testimony primarily to come up with their opinions and that they stated if the accident happened and JR's the only witnesses to how it happened if it happened the way he said it happened there has to be a defect in this piece. So the experts and that's why again we're here for spoilation it's almost always going to be circumstantial we're not going to have direct evidence I mean they can't have it both ways it's either a spoilation case or it's a products case they lost the piece and to get to the duty argument your honors they've seen a lot of evidence that this piece was defective that you probably would have won your case. Well I don't know I mean we don't know if it was because it was lost I mean we no one when they pass it up that they're not going to they're like don't no tests were done on it when they had it for over two years they laid it on a floor and that was it they didn't do any testing of it either and if you look at the Boyd decision there's language in there about the defendants burden and they and they didn't do any testing either so they can't disprove our case either I know it's not their burden it's our burden but if you look at the Boyd language I think there's an important language in there about what the defendants are supposed to do as well now they didn't do any testing so we don't know for sure but there's circumstantial evidence from J.R. Hudson he's the most he's the only direct evidence of this case and he spells it out very clearly that there were issues in the installation at the time of this accident of what happened with these pieces popping up they don't do this but for a defect. I think there's evidence that the pieces that were improperly length were either 3 16ths off 5 16ths off or 7 8ths of an inch off I think there's some evidence for each one of those dimensions but your experts didn't determine whether 3 16ths was enough to be defective or 5 16ths so they couldn't really tell us whether a variation of 3 16ths of an inch would be enough to be defective so I guess my bottom line is shouldn't your experts have done all they could to establish the defect given that they're gonna never have the actual bar to determine that but they should could have done a little bit more to give us an idea of what the chances would have been if you had the bar. Possibly but they don't know exactly it was well there was a length issue a bent issue or a twisted ear issue they don't know exactly what the so far with with their testimony with without having the piece so it's impossible to go any further than that so it's hard to say what they should have done or could have done but they're a true dauber here was never held in this case your honor it may have been a what may have come out either in cross or direct beyond their opinions to date may have been additional testimony regarding that. But your the expert reports were pretty sparse and conclusory I mean they I mean one might wonder whether they were really even really properly expert reports because they relied almost entirely on the participants in the wit of the witnesses to the accident I didn't really see the application of their specialized knowledge to the field it was sort of conclusory I mean I wouldn't quibble with their qualifications but their analysis didn't really go very deep I guess is what I would say I understand all those took JR's word for it and said yeah that's based on what I know about scaffolding that's plausible. Well that comes out of JR's testimony if you rely on those facts and they did rely on those facts from JR who was the only witness then they take that extrapolate that evidence to come up with their conclusions beyond that it's difficult to do any other testing I mean Mr. Unger did have a piece he looked at and did some testing of that you know he didn't didn't go into great detail with that I would admit but he did look at that that bar the exemplar bar that he had a similar bar and he did look at that and do some testing from that he's the expertise in scaffolding to do that and to get to the duty argument just briefly I think the appellees brought it up I don't know that the law of this case by Judge Murphy and reaffirmed by the district court level was that brand had a duty he established that in his order so that hurdle has been overcome any anything the plaintiffs did or did not do in regard to seeking the peace was really put to rest by Judge Murphy's decision that's the law of this case that was reaffirmed by Judge Reagan and basically Judge Frazier has put that on its head I mean he went beyond that it was some of those some of the issues addressed in Judge Frazier's opinion were already addressed with Judge Murphy and Judge Reagan not in great detail but he had the opportunity to see all the evidence at that time what he didn't get a chance to see was Steve Loranger's deposition that was taken after and it wasn't part of the record unfortunately but that's very telling evidence in that deposition mr. Watson told Loranger to hold on to the peace because of a lawsuit he directly said lawsuit this contradicts Watson's own testimony because he went back and forth in his own testimony as to why he was keeping the peace but he told a third-party employee and it's an employee that was working at the job site to hold on to the peace it's there for a reason because of a lawsuit when did he say that he said it I believe in September October of 2010 yeah because this lawsuit was filed what 19 months after the accident the products case yeah we had yeah and when was the demand made for the well there was there was numerous communications we sent an investigator down to try to find these pieces difficult all the employees were employees of brand are dying today wouldn't give us any information there's communications with their lawyers that was that didn't go very far we tried to get Watson's deposition they basically said he had nothing to offer we that was that went back and forth there were we attempted to do that we went down to red bud with the investigators to try to find the piece to try to talk to these people and that was never that was never accomplished obviously but they knew where it was they had the piece that responded in discovery lawsuit we filed long before the the products case was filed asked them you know puts brand on notice judge Murphy said that in his order that they were on notice based upon our complaint and discovery lawsuit we filed in st. Clair County they were aware of this that that is put to rest by by what happened with judge Murphy's decision he I mean that's law of this case so that I would I would respectfully tell you that that notice issue has been overcome so any anything we or did or did not do as plaintiffs in this case to find the cases but that was good against Dynegy as well because they weren't really a party to the case until well into 2012 they weren't but there was communications I mean Brandon Dynegy worked hand-in-hand in this case I think it you know the decision doesn't directly affect Dynegy but I think you could argue that at them there they're not on true notice but they were they were working with brand on the job site every day that other projects together so they could have been aware of it based upon the lawsuit filed so I would I would respectfully ask this court we would ask for our day in day in court a day our opportunity to be in front of a jury in this case there are factual disputes in this case as you as you've pointed out all we're asking for it's our day in court in regard to universal briefly I believe that the evidence already discussed with JR overcomes that that dispositive motion that the lower court where they were granted summary judgment so I would suggest that you consider that as well and overturn the decision regarding universal on the product case Matt Schaefer has over a million dollars in lost wages he's not worked since his accident in 2008 he's got hundreds of thousands of dollars in medical bills he's simply asking for his day in court his chance to prove its case to a jury as he's entitled to by the US Constitution that's what we're asking for and the fact that this has been decided before it got to court is a wrong that must be corrected I believe the the standard on spoilation has been a correct incorrectly applied here if you look at Boyd directly on point even some of the facts are similar we would argue that the judges respectfully made the wrong decision in regard to the Daubert issue and along with the motion for summary judgment all right thank you mr. Sullivan good morning may it please the court Sean Sullivan on behalf of Dinegy Midwest generation I want to start by answering judge flom's question about at least from Dinegy's perspective when was the first time that anyone asked us for or about this scaffold piece and that was in November of 2011 so three years after the accident and counsel had suggested that there was some back-and-forth with the lawyers for parties and that they were told that Watson didn't really have anything to tell him I think that's a misremembrance of actually what the record shows the record which is outlined in depth in our brief shows that the first time Dinegy was contacted about this matter was in July of 2011 when they received a subpoena for a an inspection of the plant premises and it didn't mention scaffold or anything like that it just asked for an opportunity to come and inspect the premises there was communication with Dinegy's in-house counsel to set that up at which point there was a request to look at any scaffold that might be there again that was in July of 2011 and there was a request for Don Watson's deposition and rather than saying he doesn't have anything to offer you Dinegy said tell us when you want to take that deposition and we'll make him available and there was it was scheduled and then plaintiffs canceled it and they wanted to wait until they received some scaffold pieces from Universal none of that had anything to do with Dinegy not cooperating their response remained the same tell us when you want his deposition and we'll make him available and that finally was scheduled in November of 2011 and it was ultimately canceled by the plaintiffs and this is set out in our brief and the documents that are cited therein after plaintiffs asked for an opportunity to interview him before the deposition and I it's in the record I I said they won't make a witness available to one party in advance of the deposition. First my recollection Mr. Sullivan was demand demand made within the statute of limitations. Well that would depend on which statute applies it was not made within the two-year statute of limitations if the four-year construction statute of limitations applied then it would have been. That we raised statute of limitations as an affirmative defense to the negligence claim but that was never litigated as to which statute would apply. So I wanted to jump in and answer that question and obviously this case ended when Judge Frazier entered summary judgment for Dinegy and Brand on the the last remaining claims which were the subject to this course de novo review. However before you can really look at whether that that summary judgment is correct under the law you have to go back and look at Judge Frazier's evidentiary ruling on motion and limiting because only by looking at what is the body of admissible evidence in the record can you determine whether Judge Frazier was correct in entering summary judgment and that evidentiary ruling is subject to the abuse of standard. So in effect that ruling in which Judge Frazier excluded what he believed to be speculative testimony about whether this bar was defective or was a cause of the accident. That ruling stands unless this court can conclude basically that it was fundamentally wrong or that no reasonable person could agree. Judge Frazier addressed the testimony the plaintiffs wanted to present. Well couldn't couldn't Judge Frazier have been right about the experts but wrong about the spoliation because the standard is different? Oh yes but but before we can get there are there are multiple elements to the spoliation issue but one of which is what was the evidence that would have been available to the plaintiff to establish each element of the spoliation claim including proximate cause. So his interpretation of what that means under Boyd and Martin what does what does that proximate cause element require would still be subject to this court's denial. But in terms of applying the record facts to whatever the court finds to be the proper analysis we have to go and look at was Judge Frazier correct in excluding some testimony from that record. And I don't want to belabor it too much but he looked at the testimony the plaintiffs proffered from two lay witnesses plaintiff Matt Schaefer and his co-worker J.R. Hudson and determined that they it would be speculation on their part if they were to try and testify that this missing scaffold bar was defective in some way or was a cause of the accident. And what he did was he looked at what was what has been their testimony what's the basis of their knowledge and what both of them testified to in their depositions was they handled the piece during the assembly process they looked at it they did not see anything that they both testified that they didn't know what caused the accident. There's a lot of reliance being placed on J.R. Hudson but if you look at the the deposition sites that are in our briefs he was specifically asked do you know what caused this accident and his answer was that I couldn't tell you I don't know. So that was the the foundation on which Judge Frazier ruled that that they would have no basis for expressing an opinion or giving testimony that this bar was defective. In fact plaintiff testified that he had never actually personally seen or experienced a defective scaffold piece ever at Baldwin. So that's the basis on which Judge Frazier excluded their testimony of defect. The two other potential witnesses, proffered witnesses, were the experts Mr. Maniago and Mr. Unger. Experts are subject to a little different amount of leeway as far as the basis on which they can express an opinion about a cause or a defect but they're not excused from the fundamental requirement that their testimony has to be have a basis in fact. And again Judge Frazier went through what was it that they did and neither of them looked at any pieces from the Baldwin plant or from Brands scaffold yard. Neither of them performed any testing on other pieces. Mr. Maniago never looked at anything, any physical piece. Mr. Unger got two pieces brand-new from Universal and he put them together and his only testimony was well it was a tight fit. He didn't say they were defective, he didn't say there was anything wrong with them. He actually never said whether a tight fit was a good thing or a bad thing, just that they were tight. So again it's that on our briefs, that's the basis on which Judge Frazier said they have not done enough to lend a factual basis to any opinion that they would render that this scaffold piece was defective. And so from there, and we just suggest that there's no way that that could be found to be fundamentally wrong or something that no reasonable person could agree with based on the evidence that he looked at, and from there the conclusion was that without some testimony of defect the plaintiffs would be unable to meet the proximate cause element of the spoliation claim. Wasn't it premised on Judge Frazier's assumption that the standard for the spoliation was really the same as for the underlying claim, which was a preponderance of the evidence, that they'd have to show it was more likely than not the defective bar? He made that statement and I would agree with counsel that he didn't outline a very specific analysis of just what does Boyd mean when the court, the Illinois Supreme Court, talked about this reasonable probability of success element. What I will say is that in Boyd, the court made explicitly clear that that spoliation is nothing more or less than a negligence claim, and it is subject to all the requirements and elements of a negligence claim. The court talked a little bit about the causation. They have to prove, a spoliation plaintiff has to prove, that the loss of the evidence caused them to be unable to prove the underlying case. And then they went down and said, what does that mean? You don't have to prove with absolute certainty, I think, because no one knows what a jury would say. Well, you don't even have to prove your claim with absolute certainty. Exactly. So, you know, exactly what Boyd meant by this. It's all in this footnote too, really. It's in a footnote. And Boyd was a pleading case, so I think it might be stretching the matters a little bit. I'm going to try and look at Boyd to answer all questions about, isn't there an inherent logic to a spoliation claim? And that is that if the standard were to show more likely than not that you would have won had you had the critical piece of evidence, you make it impossible for there to be spoliation. Because if you could prove without the critical piece of evidence that you more likely than not could make that showing, then you can't prove that the loss of the evidence damaged you. Because you have been able to prove it through some other means. Normally, there can be a spoliation case when there is one single critical piece of evidence, as there was in Boyd, where it was the heater, which would either be evidence that supported the plaintiff or the defendant, but you'll never know which. I know it was a pleading case, but at least the concept is that you can lose the decisive piece of evidence and have a spoliation claim. I agree with that concept. That is the concept of Boyd. It doesn't explain what was the other evidence that was alleged in the complaint or that might have been available to help bolster that issue. I think what Boyd means is, if you have a case in which you've done everything else to be able to put a viable case to a jury, and that if you had that piece of evidence, you would be likely to win, but you can't because you don't have that evidence, then you've made that proximate cause. I think there are several ways you can fall short, one of which would be when all of the evidence shows that the missing item would not have helped you. And the case is cited in our brief, where that's exactly what Illinois Courts has said. Well, because we wanna rule out the inconsequential minor piece of evidence got lost. You certainly want to rule that out, but I think Boyd does not, and Martin as well, does not change the fact that the plaintiff has to prove every element, and it can't be based on just speculating that this piece might have made my case for me if I had it, even though nothing else I have makes sense. But under the facts we have here, we've got a pallet full of defective scaffolding parts. We don't know what percentage, so there are some deficiencies in the plaintiff's expert case, but you have a pallet full of defective scaffolding parts, so this isn't like a tire case where you've got the one potentially defective tire that's lost. You've got a pallet full of defective parts. But no evidence that it was used in this scaffold, or that it was involved in this accident. Because that one's lost. Because no one looked. No one looked at, you know, what are the other pieces to this scaffold. No one did anything to fill in around that. So predictably, I've not been able to reach all the issues, but I think they're well articulated by Judge Frazier in the operation. Thank you, Mr. Sullivan. Mr. Schroeder. May it please the Court, David Schroeder for defendant of Hellie Brand. The plaintiff's main brief and the discussion today has gone to the proximate cause element of a spoliation claim. But the Illinois Supreme Court has actually said that there's four elements of a spoliation claim. You have to have a duty by losing or destroying the evidence. Then what we've been talking about for the past few minutes, that loss has to proximately cause the plaintiff's inability to reasonably be able to prove the case. And then there have to be damages that flow from that. With respect to Brand, we submit that the possess or have control over the bar. It is undisputed that Brand did not lose the bar. And there are no cases in Illinois, and the plaintiffs don't cite any, where a defendant has been held liable on a spoliation claim where it wasn't their evidence, they didn't own it, they didn't possess it, they didn't control it, and most importantly they didn't lose it. So we would submit that the second of the four elements is clearly present, is clearly not present here with respect to Brand. Assuming there was a duty, and I'll turn to the duty issue in a moment, we didn't breach it because we didn't lose it. And so the second element that's set forth in a lot of the Illinois Supreme Court cases, that you have to breach the duty by losing the evidence, does not apply to Brand. Now Brand has said that there are certain ways that a duty can be created. You can have an agreement, a contract, a statute, and then they throw out this lovely term, special circumstances, which of course they then do not define. Now in this case, we set forth the most recent Illinois Appellate Court case, the Woffer versus Tracy case, did a nice job of sort of laying out the three elements that you have to show to have duty. First, and those elements are all based on Illinois Supreme Court cases. So first you have to show that there was a demand or a request by the plaintiff that the evidence be preserved, or that the defendant segregated the evidence and held it for the plaintiff's benefit. Secondly, there has to be, you have to look at whether the plaintiff had an opportunity to examine the evidence or to conduct testing on it. And third, did the defendant have possession or control of the evidence? And in this case, all three of those elements are lacking as to Brand. Now with respect to the first element, it's a little bit unclear to me from reading their response in their brief, but they seem to be saying that when they filed the improper discovery action, that somehow we had noticed that they were somehow interested in scaffolding from, it was much broader than just saying produce the bar. And that somehow, given that knowledge, we then had a duty to tell them what we knew about it. Now I would submit that when they filed a completely improper respondent and discovery action that just named Brand as a respondent and discovery, that we had no duty to do anything. And so to base our potential duty to preserve the evidence on a duty to tell them that someone else had it in an improperly filed action over which the Illinois court had no jurisdiction, I just don't follow that logic. In addition, the cases say that a mere request that you preserve the evidence alone with nothing more is not sufficient. You have to couple that with something else which the courts have at least said is that you have to have possession or control of the evidence. So we don't think they can meet the first of the three. Now the second one, the second test, is whether they had reasonable access to it. And it's clear that they did, but they didn't take advantage of it. They filed this improper discovery action, so not only did the Illinois court not have jurisdiction over it, but they didn't even ask the right questions. If they were going to use that route to try to locate the bar, why didn't they serve a request to produce that said where's the bar or produce the bar? But they never did that. In fact, they waited until over two years after the accident, and I see my time is up. They waited until two years after the accident before they actually served a subpoena on Brand and said produce all of the scaffolding. And then even later than that, they served a subpoena on Dynegy and asked them to meet the three standards to establish a duty. If Brand had no duty, then you cannot base exfoliation of evidence claim against Brand, and we submit that the trial court was correct in dismissing the claims against Brand. Thank you, Mr. Schroeder. Mr. Stockburger? May it please the court. Good morning. My name is Jim Stockburger, and I represent Universal Scaffolding. In that, Appellant's Counsel really didn't really address anything regarding Universal's summary judgment. Primarily, I'm just going to rely upon our brief and the cases cited. The only issue I do want to bring up, if I could, is that the question about what was known at the time of the manufacture, was the piece defective, allegedly defective at the time of manufacture, and there's clearly no evidence at all submitted, even by the plaintiff's experts, because when Judge Reagan issued his order, the whole issue of the Daubert issue was not even addressed. Mr. Unger, he pointed out, Mr. Unger said there could be a large variety of causes to this, you know, somebody could have, you know, the little ears to the bar, somebody could have hit it with a hammer. There is no evidence without the bar that there was a defect when it left the control of the manufacturer, so it would have all have been speculative, and the cases that are cited, all of them talk about that. So again, I'm relying upon those cases and the arguments, and I ask this Court to affirm Judge Reagan's order. If anybody has any questions? Apparently not. Thank you. All right, thank you. Mr. Penance? Just briefly, Your Honors, in regard to what Mr. Sullivan mentioned about the Boyd decision and his speculation about what it says, I'm going to read directly from the Boyd decision, which is controlling here. The facts are similar and it's directly on point. The Boyd court said, plaintiffs do not have to prove the bar was defective. Plaintiffs need only prove that but for the loss of the bar, they had a reasonable probability of succeeding in the underlying suit. Boyd is the only case that matters in this. He mentioned Martin, but Martin is factually different in this case. There's no correlation between the two. Boyd also says that the defendants have the burden to prove that plaintiffs could not have prevailed in underlying action, even if they had the bar, is supported by the Boyd decision. In explaining his position, the Boyd court suggested that defendants had the burden of proving that even with the missing evidence, plaintiffs would have lost their underlying product liability claim. Here, it's clear that plaintiffs could not prove their claim. Judge Reagan decided that. He dismissed us. Also, just to be clear about it, I think your experts more or less conceded it. Yeah, pretty much. Pretty straightforward concession. I would agree with that. And what's important here is the reading of the facts and J.R. testified on the day of the incident, and this is clear from his deposition, unrebutted testimony, clear from his deposition, the day of the incident, he was only using universal scaffolding. He said that in his deposition. The day of the incident, he was only using universal scaffolding. This is new scaffolding, made in China, sticker on it, right out of the rack. Would you answer Mr. Trader's kind of neat argument that essentially they didn't lose the bar, so you can't, you don't have a viable, the argument about the duty is more complicated, but the one about the breaches is pretty straightforward. They didn't lose the bar, so you don't have a spoliation claim against brands. That's been briefed twice and decided by Judge Reagan and Judge Murphy against that, and it's clear in Judge Murphy's opinion what he says. Judge Murphy practiced in state court for a long time. He said that the complaint he responded to in this case was a proper state action. We sent a subpoena to brand. We sent them interrogatories. We noticed them up for a deposition. They didn't respond to any of that, nothing. They were unnoticed of this. Their employees, Wampler, their superintendent, a simple phone call from them would have said, Brian, do you have the, what's going on with this case? There's a lawsuit pending. We know there's a work comp case. Everybody knows about the workers comp case. Dinergy and brand both knew about that from the beginning, so that's considered litigation already. So they were unnoticed, and Ryan Wampler was in Watson's office almost every day and saw the piece. A simple phone call from their counsel in Chicago, and by the way it was served in Chicago. It's a proper state action. St. Clair County Court had jurisdiction over brand in this case. They have a registered agent in Chicago to serve. They were properly served with all these documents from the pleadings. Wampler knew it was in the office of Don Watson. These were employees of brand and Dinergy. We tried to get a hold of them. They wouldn't respond to us. So that's all there. If you read Judge Murphy's opinion, he establishes duty. It's clear from his opinion and the oral argument in front of Judge Murphy. The inference in his opinion and his order, and it's reaffirmed by Judge Reagan, is that there's breach as well. So the three elements that Mr. Schroeder talked about, duty, breach, and the loss, proved our case. We know the loss proved our case. If you agree with Universal, I won't pick on Mr. Stockburger. He's wounded today, but it's clear from the decision in the underlying court that they took that away from us. So we don't have a products case. That element is already met. Judge Murphy and Judge Reagan gave us the duty argument and it's inferred in Judge Murphy's decision that there's a breach. They lost it. That's the breach. They were on notice. They could have told Dinergy. That's all it took. So all we're for our day in court, gentlemen, and we would ask that you deny and decide against Judge Frazier in his decision. As you mentioned earlier, it's not even clear from Judge Frazier's opinion what standard he used. That alone gives us enough to go back to a trial in this case before a jury of our peers. Thank you. Thanks to all counsel. The case is taken under advisement.